IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JHAPENDRA UPADHAYAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-CV-322 |
| | ) | |
| KRISTI NOEM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

Jhapendra Upadhayay challenges the denial of his application for naturalization. Because he admits in his complaint that he misrepresented his marital status in his visa paperwork and this misrepresentation is material as a matter of law, he was not lawfully accorded permanent residency and there was no error in denying his application for naturalization. The defendants' motion to dismiss will be granted.

**I.     Facts As Alleged**

In June 2010, Mr. Upadhayay married his wife in Nepal. Doc. 1 at ¶ 12. Some years later, he registered for the United States Diversity Visa Lottery. *Id.* at ¶¶ 9, 13; Doc. 9-1 at 3.[1] In his registration paperwork, he listed his marital status as single. Doc. 1 at ¶ 13. In 2016, he also listed his marital status as single on a U.S. Form DS-260,

---

[1] Mr. Upadhayay alleged on information and belief that he registered for the 2018 Diversity Visa Lottery, Doc. 1 at ¶ 13, but the defendants have submitted his Form DS-5501 application showing he registered for the 2017 lottery. Doc. 9-1 at 3. Mr. Upadhayay incorporated Form DS-5501 into his complaint by reference, Doc. 1 at ¶ 13, and he has not disputed its authenticity. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Immigrant Visa Electronic Application. *Id*. at ¶ 15. Mr. Upadhayay alleges that he did not disclose his marital status because he mistakenly thought that doing so meant his wife would have to immigrate with him. *Id*. at ¶¶ 13, 15.

In October 2017, after approval of his DS-260 application, he received lawful permanent resident ("LPR") status based on his selection in the DV Lottery program and was issued a visa. *Id*. at ¶ 16. He soon thereafter immigrated to the United States. *Id*. at ¶ 13. His wife and child followed later, on his sponsorship. *Id*. at ¶ 18.

In September 2023, Mr. Upadhayay applied for citizenship and disclosed his marriage to United States Citizenship and Immigration Services ("USCIS") in Form N-400. *Id*. at ¶ 17. He also disclosed his marriage during his naturalization interview on January 22, 2024. *Id*. at ¶ 19.

On January 29, 2024, USCIS denied Mr. Upadhayay's naturalization application, finding that his failure to list his wife on his initial entry application invalidated his LPR status. *Id*. at ¶ 20. Mr. Upadhayay filed a Form N-336 requesting a hearing on the denial. *Id*. at ¶¶ 21–22. In a written decision, USCIS affirmed its initial denial without an oral hearing. *Id*.; Doc. 4 at 2–3.

## II. Litigation History

Mr. Upadhayay filed this lawsuit in April 2024, alleging that he misstated his marital status on the two forms "due to a misunderstanding that disclosing his actual marital status would necessitate his wife's then inability to immigrate to the United States." Doc. 1 ¶¶ 13, 15. He contends that his misstatement about his marital status was not material or willful and that he was lawfully accorded permanent residency. He

asserts two claims for relief, one under the Immigration and Nationality Act and the other, in the alternative, under the Administrative Procedures Act ("APA").

The defendants move to dismiss for failure to state a claim. Doc. 8. They assert that he failed to meet the statutory requirements for naturalization because he was not lawfully admitted for permanent residence based on his false statements about his marital status. Doc. 9 at 10.

### III.  Applicable Law

To qualify for naturalization, an applicant must establish, as is relevant here, that he was "lawfully admitted for permanent residence." 8 U.S.C. § 1427(a); *see also Injeti v. U.S. Citizenship & Immigr. Servs.*, 737 F.3d 311, 315 (4th Cir. 2013). "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20). "[A]n alien has not been 'lawfully admitted' when she was 'not legally entitled' to LPR status for *any* reason." *Injeti*, 737 F.3d at 317 (quoting *Gallimore v. Att'y Gen.*, 619 F.3d 216, 224 (3d Cir. 2010)). "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i).

If a naturalization application has been denied, an applicant may petition for a de novo review of the denial in district court. 8 U.S.C. § 1421(c). A plaintiff challenging the denial of his naturalization application cannot simply show he received LPR status

3

but "must further demonstrate that the grant of that status was in substantive compliance with the immigration laws." *Injeti*, 737 F.3d at 316 (cleaned up).

## IV. Analysis

In the complaint, Mr. Upadhayay acknowledges that he misrepresented his marital status on his 2016 visa application and in the lottery registration form that was the basis for his admission to this country: he stated that he was single when in fact he was married. A misrepresentation about marriage is material as a matter of law under the regulatory framework in place, he was not lawfully admitted for permanent residence, and he was thus ineligible for naturalization.

The defendants point to a plethora of public records subject to judicial notice that show this misrepresentation was material. Federal regulations require diversity visa petitions to include "the name, date and place of birth and gender of the petitioner's spouse . . . regardless of whether or not they are living with the petitioner or intend to accompany or follow to join the petitioner should the petitioner immigrate to the United States." 22 C.F.R § 42.33(b)(1)(v) (cleaned up). The instructions for the 2017 Diversity Immigrant Visa Program stated that "failure to list your eligible spouse will result in your disqualification as the Diversity Visa principal applicant and refusal of all visa applications in your case at the time of the visa interview." Registration for the Diversity Immigrant (DV-2017) Visa Program, 80 Fed. Reg. 61552, 61553 (Oct. 13, 2015). The U.S. Foreign Affairs Manual directs employees to "[d]eny the visa application of an applicant who failed to list on their DV program entry a spouse or child who was required

to be listed." 9 FAM 502.6-4(U)(b)(2)(c)(iii).[2] Consular officers must deny a visa if the applicant is likely to become a public charge, and they consider family status and financial status when making that determination. 8 U.S.C. § 1182(a)(4)(A), (B)(i).

As the Fourth Circuit explained in *Injeti*, misrepresentations about marital status are material. *Injeti*, 737 F.3d at 316. In *Injeti*, the plaintiff, like Mr. Upadhayay, gained LPR status based on an LPR application in which she misrepresented that she had no former spouses. *Id.* at 312. USCIS denied her application for naturalization upon discovering this misrepresentation and upon realizing that she had submitted a fraudulent death certificate for her first husband in connection with a separate immigration proceeding. *Id.* The Fourth Circuit held that Ms. Injeti's misrepresentation was material for two reasons. As is relevant here, it noted that a misrepresentation in an immigration proceeding "is material if it has a natural tendency to influence the decision of immigration officials" and implicitly held that a representation about marriage to fell into that category. *Id.* at 316 (quoting *Kungys v. United States*, 485 U.S. 759, 772 (1988) (cleaned up)).

Mr. Upadhayay points to factual differences between his situation and the plaintiff in *Injeti*. Certainly, the facts in *Injeti* were more aggravated than Mr. Upadhayay alleges as to his situation. But *Injeti* makes it clear that the USCIS properly denied naturalization based on the material misrepresentation about marital status, and it is thus on point. *Id.* at 316–17.

---

[2] U.S. Department of State, Foreign Affairs Manual, https://fam.state.gov/ (last visited Sept. 16, 2025).

Mr. Upadhayay also contends that because he has alleged that the misstatement about his marriage was not material, dismissal for failure to state a claim is inappropriate. However, the visa instructions and federal regulations required his marital status to be listed and stated that misrepresentations about marital status will result in denial, Registration for the Diversity Immigrant (DV-2017) Visa Program, 80 Fed. Reg. at 61553; 22 C.F.R § 42.33(b)(1)(v); moreover, USCIS employees must deny visa applications that misstate marital status. 9 FAM 502.6-4(U)(b)(2)(c)(iii). Thus, his acknowledged misstatement about his marital status confirms he is ineligible for naturalization and warrants dismissal at this stage. A conclusory allegation to the contrary is not sufficient to state a claim.

Pointing to a provision in the Foreign Affairs Manual that allows a USCIS employee to request an advisory opinion if the employee believes an applicant merits naturalization, 9 FAM 502.6-4(U)(b)(2)(c)(iii), Mr. Upadhayay contends he is entitled to hearing to show that he merits such a request. Although he is correct that an advisory opinion route is available to USCIS employees, this provision does not aid him.

First, that same provision still requires the employee to refuse the visa application with the misstatement. *Id.* Thus Mr. Upadhayay cannot show he was "legally entitled" to the LPR status he received despite a possible workaround post-refusal.

Second, the requirement for a hearing is not absolute. Section 1421 provides that a "person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court." 8 U.S.C. § 1421(c). Section

6

1447(a) provides that "the applicant may request a hearing before an immigration officer" and provides some rules for such hearings.  8 U.S.C. § 1447(a)-(e).  The applicable regulations provide further requirements for such a hearing, if held, but also provide that the reviewing officer "may utilize a less formal review procedure as he or she deems reasonable and in the interest of justice."  8 C.F.R. § 336.2(b).  The statutory use of the phrase "may request" and the explicit regulatory option to use a review process "less formal" than a hearing establish that a full-fledged hearing is not mandatory.  The defendants make no argument that the decision to deny naturalization is not final, and none would be successful on this record.[3]

In his brief, Mr. Upadhayay contends that he did not misstate his marital status to deceive USCIS and instead misunderstood the question.  That may be, but this argument conflates willfulness with materiality.  Materiality has to do with the importance of the misstatement, not the applicant's purpose in making the misstatement.  *See Injeti*, 737 F.3d at 317.  Because his misstatement was material, his intention behind the statement is irrelevant.  *Id.*

---

[3] Mr. Upadhayay asserts a claim under the APA, but a district court lacks jurisdiction for APA review "when a different statute provides 'an opportunity for de novo district-court review' of an agency decision."  *Nielsen v. Hagel*, 666 F. App'x 225, 231 (4th Cir. 2016) (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009)).  The availability of de novo review under § 1421(c) bars review under the APA.  *See e.g.*, *Usoh v. USCIS*, No. 2:22-CV-1470, 2023 WL 4998550, at *5–6 (D.S.C. Mar. 30, 2023) (Mag. J., recommendation), *adopted*, 2023 WL 4634955 (D.S.C. July 20, 2023).  Because Mr. Upadhayay properly sought judicial review pursuant to § 1421(c), the Court lacks jurisdiction over his alternative APA claim.

### V.    Conclusion

Mr. Upadhayay admits in his complaint that in his immigration paperwork he said he was single when in fact he was married.  This misrepresentation about marriage was material as a matter of law under the regulatory framework in place, he was not lawfully admitted for permanent residence, and he was thus ineligible for naturalization. Therefore, he failed to state a claim for wrongful denial of naturalization, and the Court grants the defendants' motion to dismiss.

It is **ORDERED** that the defendants' motion to dismiss, Doc. 8, is **GRANTED.** Judgment will be entered separately.

This the 17th day of September, 2025.

_____
UNITED STATES DISTRICT JUDGE